[Civ. No. 29710. First Dist., Div. Four. Dec. 22, 1972.]

CRAVENS, DARGAN & COMPANY et al., Plaintiff and Appellants, v. PACIFIC INDEMNITY COMPANY, INC., Defendant and Respondent.

MOYER CHEMICAL COMPANY, Plaintiff and Appellant, v. PACIFIC INDEMNITY COMPANY, Defendant and Respondent.

(Consolidated Cases.)

## COUNSEL

Ropers, Majeski, Kohn, Bentley & Wagner and Michael J. Brady for Plaintiffs and Appellants.

Toff & Gordon and Melville A. Toff for Defendant and Respondent.

## OPINION

**DEVINE, P. J.**—This case has to do with the question of liability of Pacific Indemnity Company under a comprehensive liability policy which it issued to Moyer Chemical Company. The plaintiff insurance companies, Cravens, Dargan & Company and London & Edinbergh Finance Co., appellants, also carried comprehensive liability insurance for Moyer and paid a large proportion of the settlement of the third party lawsuit. Moyer Chemical paid its deductible outright, but also paid an amount ($26,750) equal to that paid by Cravens, Dargan & Company. But the Moyer Chemical payment was supplied by a loan from Cravens, Dargan, and was to be repaid only from any recovery made in the contemplated lawsuit against Pacific Indemnity, and the control of the lawsuit was agreed to belong to Cravens, Dargan. Moyer Chemical and Cravens, Dargan filed separate actions against Pacific Indemnity, for declaratory relief and indemnity. The actions were consolidated for trial. Judgment was in favor of Pacific Indemnity. Plaintiffs appeal.

The claim was for damages to a seedling crop of tomatoes. It is undisputed that the damage to the crop was caused by the use of Lindane 2-G, an insecticide which had been sold by Moyer to the planter, Marchese.

Pacific Indemnity refused to pay any part of the settlement. It is Pacific Indemnity's position that its policy excludes "products hazard." The excluded "products hazard" is defined in the policy thus: "The term 'products hazard' means: '(1) Goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name if the

accident or occurrence occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name if such action or occurrence occurs away from premises owned, rented, or controlled by the named insured.' "

The Lindane which caused the damage was manufactured, sold and applied in granular form. The product is produced by putting clay granules in a rotating drum, and spraying Lindane dissolved in solvent on the rotating granules. When enough of the Lindane has been applied (here, a 2 percent concentration was desired), the process is halted, and the solvent allowed to dry, leaving clay granules treated with the active ingredient, the Lindane. The manufacture of the granular product for Moyer Chemical was done by DePester Western Company (which also contributed to the settlement), but the Lindane itself was by still another company. The plant manager for DePester testified that the solvent used was methylisobuytleketone; that he was unaware that this had any phytotoxicity to tomato plants, although he had run no tests, and had no way of knowing whether it was harmful or not; that the granular product was weighed and no excess, which would indicate overage of any ingredient, appeared.

Kenneth Wade, sales manager for Moyer Chemical, was produced as a witness for plaintiffs. He had 33 years' experience in selling insecticide and in making recommendations to farmers, and was one of the most experienced men in the work in the Santa Clara Valley. He recommended to Moyer the use of Lindane for the purpose of destroying springtails, which eat tomato seeds. But he had not recommended the use of Lindane in granular form before 1964, the year in which the Marchese crop was damaged. The granular form was recommended because the Marchese machinery was adaptable to its use and not to the dust form, which requires a blower. He testified that in his opinion the cause of the loss was a defective product as made by DePester; that in order to damage tomatoes by use of Lindane another ingredient must be the cause, wherefore he deduced that a wrong solvent was used, the choice of which was DePester's; that there was nothing wrong about the application of the insecticide; that there was no difference between Lindane in powder form or in granular except the size of the particle; that he would recommend Lindane again in the same form but with a different solvent. A test performed upon an official sample of the granules taken from Marchese Farms by the Department of Agriculture of the State of California shows not only that the product was deficient in Lindane, but that an acetate solvent was present. A consulting agrologist, Stewart W. Turner, who had been retained by the defendant in the Marchese lawsuit, Moyer Chemical Company, and by its insurer, Cravens, Dargan, reported to his clients during the course of the lawsuit that it would be

impossible to establish what was the quantity of acetate solvent within the sample because the material is of volatile nature. He went on to say that the nature of an acetate solvent is such that it is very phytotoxic to plants when in close proximity, particularly to tender germinating seed such as tomato.

Contra to Wade's testimony was that of another of plaintiffs' witnesses, Theodore O. Tuft, an agricultural consultant, who testified that there was no fault in the manufacture of the product; that the methylisobuytleketone was a proper solvent; that the cause of the damage was that the granules came into close contact with the seeds and destroyed them; that he, Tuft, had found that plants had died in those areas where the granule had been placed next to the seeds but not where the granule was not so near; that there should have been testing with the granular product, theretofore unused, before it was recommended for a whole field.

The trial judge found that the product, Lindane 2-G, sold to Marchese was defective and that the defect directly and proximately caused the damages. Appellants contend that as a matter of law the evidence was insufficient to support this finding and that the evidence overwhelmingly demonstrated that the damage to the Marchese tomato crop was caused by "operations" of the insured consisting of negligent sale of the product, negligent recommendation that the product be used, and negligence in connection with the application of the product to the Marchese fields.

 Any challenge to the sufficiency of the evidence to support the finding of a trial judge is met at the outset with an often repeated sentence, which may be quoted again, with emphasis slightly changed from the "begins and ends" part (so frequently italicized) to the word "power": When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the *power* of an appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. (*Grainger* v. *Antoyan,* 48 Cal.2d 805, 807 [313 P.2d 848].) So, what is spoken of is the very authority of an appellate court.

 This principle being understood as the norm, it remains to apply it. The court had the testimony of two experts, Wade and Tufts; both were witnesses produced by appellants. The judge was entitled to accept the opinion of Mr. Wade that the product itself was defective, based on his experience that Lindane itself had not caused damage in the past, although other ingredients mixed with it have done so. Defect of a product may be shown by circumstantial evidence (*Gherna* v. *Ford Motor Co.,* 246 Cal.App.2d 639, 650 [55 Cal.Rptr. 94]; *Grinnell* v. *Charles Pfizer & Co.,*

274 Cal.App.2d 424, 435 [79 Cal.Rptr. 369]), wherefore, an expert may base his opinion on such evidence.

 Appellants suggest that the product cannot be considered defective because it did what it was supposed to do, that is, it killed the springtail insects, for although it also killed the crop of tomatoes, this was because of faulty selection and application of the product. This argument derives from appellants' interpretation of *McGinnis* v. *Fidelity & Cas. Co.,* 276 Cal.App.2d 15 [80 Cal.Rptr. 482], in which a products hazard exclusion of an owners' landlords' and tenants' policy was held inapplicable to the accident, which was an explosion of gunpowder which had been sold by the policyholder, a dealer in guns, ammunition and related products. The injury was to a 15-year-old boy to whom the dealer had sold the gunpowder, in violation of Health and Safety Code, sections 12105.1 and 12000. The court did remark that the powder was not defective because it did exactly what it was designed to do and what everyone expected it to do, it exploded when detonated. But the difference between that case and this is obvious. The gunpowder dealer neither sold a defective product (as respondents in our case assert was done) nor recommended a nondefective product for unsuitable use (as appellants herein contend), but sold a dangerous product to the wrong person. In the instant case, Moyer Chemical knew the exact use to which the insecticide was to be put, and of course knew that it must be effective against the pests but innocuous to the seedlings. Its acts were those of manufacture and sale and both are declared to be excluded from insurance coverage.

The fact that the product was not actually manufactured by Moyer Chemical Company does not alter the company's status as the party responsible for damages for a defective product. "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." (Rest., Torts, § 400, p. 1086; *Gherna* v. *Ford Motor Co., supra,* 246 Cal.App.2d 639, 651.) Nor does the fact that Moyer Chemical failed to test the product as made by DePester take the case out of the products hazard exclusion. Such failure would be part of either the process of manufacture or of sale.

At this point it is well to examine the exclusionary clause upon which the trial judge based his decision. It is the clear and positive one set forth above relating to manufacture or to sale and not the "operations" exclusion (to which no reference is made in the court's findings) which has been criticized as ambiguous in *Insurance Co. of North America* v. *Electronic Purification Co.,* 67 Cal.2d 679 [63 Cal.Rptr. 382, 433 P.2d 174], wherein

the washing of a swimming pool with acid, being quite unnecessary to the efficient working of a rented water purification machine, was held to be removed from the product sufficiently as not to be included in the cloudy "operations" exclusion; and in *Hays* v. *Pacific Indem. Group,* 8 Cal.App.3d 158 [86 Cal.Rptr. 815], wherein the *installation* of a garage door which fell (the product itself apparently being nondefective) was held to be a non-excluded hazard, again under the obscure "operations" clause.

The policy issued to Moyer Chemical by Pacific Indemnity does not merely contain the products exclusion in a printed paragraph. On its face. it contains, under the headings "coverages" and "limits of liability," clearly *typed,* the figures ($300,000, $500,000 and $100,000) for various coverages. In the section designated "Bodily Injury Liability," there appear, next to the words "aggregate products," the words "Not Covered" clearly typed; and in the section designated "Property Damage—Except Automobile" there appear, next to the words "aggregate products," the words "Not Covered," clearly typed. In fact, these are the only noncoverages. The words stand out boldly.

Moreover, the policy is in marked contrast to that issued to Moyer Chemical about a year earlier by Cravens, Dargan for property damage liability and still effective in 1964, in which there is expressly covered, in typewriting, liability for "all products manufactured, sold, handled or distributed by Moyer Chemical Company." For this coverage, Moyer Chemical paid a specified sum of $2.10 per $1,000 of its gross receipts. The company simply did not purchase products liability insurance (a coverage patently important to a producer of chemical products) from Pacific Indemnity. Those in charge of the insurance for the firm surely ought to have been aware of that fact. The testimony of the president of the company that he thought Pacific Indemnity's liability was primary and Cravens, Dargan's excess, is of no weight. He did not testify that he read even cursorily either policy or that he was misled by anyone or by anything in the Pacific Indemnity policy itself. (5) An insurance company has the right to limit coverage, and when it has done so plainly and in harmony with the insured's reasonable expectations, the limitation must be respected. (*Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 432 [296 P.2d 801, 57 A.L.R.2d 914]; *Fullerton* v. *Houston Fire & Cas. Ins. Co.,* 234 Cal.App.2d 743, 750-751 [44 Cal.Rptr. 711].)

 Appellants propose that the *recommendation* of the product is something different from its manufacture, and is outside the "products hazards" exclusion, therefore within the coverage of the comprehensive lia-

bility policy. But the acts of Moyer Chemical in selecting the product to be used, taking on itself the role of manufacturer, and then selling it are all part of the excluded process of manufacture, handling and sale. (*Bitts* v. *General Accident Fire & Life Assur. Corp.*, 282 F.2d 542.) A product may be defective even though (contra to the finding, as explained above) it were faultlessly made. (*Gherna* v. *Ford Motor Co., supra*, 246 Cal.App.2d 639; Rest. 2d Torts, § 402a.)

The cases cited by appellants are different. In *Atkins* v. *Hartford Accident & Indemnity Co.*, 7 Mich.App. 414 [151 N.W.2d 846], a pharmacist who had nothing to do with the product, amobarbital, itself nondefective. negligently sold it to a customer; in *Thibodeaux* v. *Parks*, (La.App.) 140 So.2d 215, the manufacturer of a valve was responsible, and so was its insurer despite products hazards exclusion, for falsely representing that it could be used with *another* product, manufactured by a separate company; in *Reed Roller Bit Co.* v. *Pacific Employers Ins. Co.*, 198 F.2d 1, Reed was in no way connected with the manufacture of the wheel which disintegrated, nor did it sell the wheel. Its salesman failed to instruct as to its use. In each of these cases, the service (or disservice) was an act sufficiently removed from the quality of the product in question to escape the exclusionary clause.

Also unacceptable is appellants' assertion that failure to warn is a fault separate from manufacture and sale. Failure to warn may create strict liability. (*Johnson* v. *Standard Brands Paint Co.*, 274 Cal.App.2d 331. 340 [79 Cal.Rptr. 194]; *Canifax* v. *Hercules Powder Co.*, 237 Cal.App.2d 44 [46 Cal.Rptr. 552].) In our case there is not only failure to warn but positive recommendation of a product sold and, by representation, manufactured by the defendant. The whole process was so merged as to fall within the kind of liability which the insured decided not to pay for when purchasing defendant's policy.

Appellants further propose that Moyer Chemical was liable (or at least arguably so, thereby requiring defense by Pacific Indemnity) for negligent operation in supervising the application of the insecticide. A Moyer Chemical fieldman named Ledbetter was in the Marchese fields when the Lindane was disseminated from a moving hopper. But Ledbetter, Moyer Chemical's own man, testified that his work was part of the selling process. There was no charge to Marchese for his services. Thus, this part of the case is far removed from the factual situation in *Bituminous Casualty Corporation* v. *R. & O. Elevator Co.*, 293 F.2d 179, in which the defendant faultily serviced an elevator—the service being what defendant was paid for. The company had nothing to do with the manufacture or installation. Wade, of Moyer

Chemical, testified that in his opinion there was nothing wrong about the *application* of the Lindane.

There was an integrated process in the manufacture, sale and handling of the single product, Lindane, which removes the case from the rationale of the *Electronics Purification* case.

Appellants contend that it was known to Pacific Indemnity that there was a *potential* liability under its policy (especially in the matter of *recommendation* of the product), wherefore the insurer was obliged to *defend* the Marchese action, even though ultimately it might be decided that there was no liability under the policy. The penalty for failure to defend is liability for the full amount of a reasonable settlement (and it was stipulated that the settlement was reasonable). Appellants cite *Gray* v. *Zurich Insurance Co.*, 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168]; *Hays* v. *Pacific Indem. Group,* 8 Cal.App.3d 158 [86 Cal.Rptr. 815]; *State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.,* 9 Cal.App.3d 508 [88 Cal.Rptr. 246]; *Paramount Properties Co.* v. *Transamerica Title Ins. Co.,* 1 Cal.3d 562 [83 Cal.Rptr. 394, 463 P.2d 746]. But in all of these defense was tendered. In the present case, no one called on Pacific Indemnity to defend, although Moyer Chemical and Cravens, Dargan were actively defending themselves. To be sure, Pacific Indemnity knew of the lawsuit, informed itself about it, and asked Moyer Chemical for information about the loss. Pacific Indemnity had engaged a lawyer to appear in a related case (that of a different plaintiff suing for damages because of the Lindane), and the lawyer attended some depositions in the Marchese case, but the local claims manager testified that he understood this was as a passive observer. Then the home office advised that there was no coverage. The claims manager did not inform Moyer Chemical of this, deeming it unnecessary. At no time, he testified, did he authorize an attorney to associate in the defense of the Marchese claim.

A request was made on Pacific Indemnity by a letter asking that it contribute to a settlement. Even at this point, it was not pointed out to Pacific Indemnity, so far as the record shows (the only writing before us is the single letter), why the company should pay despite the products exclusion clause, nor was there an offer suggesting that it join in the defense against Marchese' claim, but only that it contribute to a settlement.

Nor is estoppel shown against the defense of "no tender." The court found that Pacific Indemnity at all times acted in good faith. There was not shown any action taken or foregone by appellants which was induced by conduct of Pacific Indemnity. One would expect testimony, when a claim

of estoppel is made, from someone who would assert he was beguiled, but here none was offered.

The judgment is affirmed.

Rattigan, J., and Bray, J.,* concurred.

A petition for a rehearing was denied January 15, 1973.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.