[Civ. No. 49878. Second Dist., Div. One. Dec. 22, 1977.]

AETNA CASUALTY AND SURETY COMPANY,
Plaintiff and Respondent, v.
LONNIE RICHMOND, Defendant and Appellant.

**COUNSEL**

Stump, Garner & Wright and William T. Garner for Defendant and
Appellant.

Haight, Dickson, Brown, Bonesteel & Rigg, Kim H. Collins and Roy G. Weatherup for Plaintiff and Respondent.

## OPINION

**HANSON, J.**—Lonnie Richmond, doing business as Lonnie's Sporting Goods (hereinafter referred to as Richmond), appeals from a judgment by the trial court, sitting without a jury, declaring that Aetna Casualty and Surety Company (hereinafter referred to as Aetna) has no duty to indemnify Richmond for personal injury damages recovered by a purchaser of skis on a theory of products liability.

### FACTS

On or about December 19, 1968, Olivia Ascascio purchased from Richmond a complete set of ski equipment and an employee working on Richmond's premises affixed the bindings to the skis and specially adjusted the bindings to fit the purchaser. Ms. Ascascio subsequently was injured while skiing. On or about July 10, 1969, Ms. Ascascio filed suit against Richmond and others for personal injuries. In her complaint she alleged that on or about January 18, 1969, while utilizing the ski equipment purchased from Richmond, Ms. Ascascio fell while skiing at Mammoth Mountain and suffered injuries to both legs as a proximate result of the failure of the ski bindings to release properly. Among other things Ms. Ascascio alleged that Richmond negligently and carelessly adjusted the ski bindings; that such negligence caused the failure of the bindings to release when she fell; and that this was the proximate cause of her injuries.

Richmond demanded that Aetna defend and indemnify him. Although Aetna claimed nonliability, it did appear and defend the action. Eventually a $15,000 compromise settlement was reached between Ms. Ascascio and the defendants during the pretrial stages of the litigation; $10,000 was agreed to be the fair and reasonable amount of Richmond's liability.

Aetna on July 30, 1973, instituted an action for declaratory relief claiming it had no duty to defend or indemnify Richmond against Ms. Ascascio's claim. It based its claim to relief on a policy endorsement excluding products liability exclusion as follows: "It is agreed that such

insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to *bodily injury* or *property damage* included within the *Completed Operations Hazard* or the *Products Hazard.*" (Italics in original.) However, Aetna did undertake defense of the action and on December 9, 1974, it filed a first amended and supplemental complaint for declaratory relief alleging merely that it had no duty to indemnify.

In its complaint Aetna admitted that it was the insurance carrier on Richmond's liability insurance policy and acknowledged that Olivia Ascascio, who was injured while using ski equipment purchased from Richmond, had obtained a determination that Richmond was liable for damages. Aetna, however, alleged that it defended that action on behalf of Richmond under a reservation of rights; that the alleged liability of Richmond to Ms. Ascascio was not covered under the terms of the Aetna policy; and that the personal injury case was settled with Aetna and Richmond preserving their respective positions relating to insurance coverage. It was agreed that Ms. Ascascio's $10,000 award would be paid on behalf of Richmond by either Richmond or Aetna depending on the outcome of the declaratory relief action. Richmond claimed estoppel based on alleged representations by Charles Bell, Aetna's insurance agent, and the conduct of Aetna in defending the personal injury action.

At trial Aetna introduced a stipulated statement of facts in which it was agreed that Aetna's policy of liability insurance issued to Richmond was in full force and effect as of the time of Ms. Ascascio's injuries, and a full, complete and correct copy of the policy was attached to the stipulation of facts and incorporated therein. Also attached and incorporated by reference was a complete copy of Ms. Ascascio's complaint in the products liability action. It was stated that after the complaint was served on Richmond, he demanded that Aetna defend and indemnify him under their insurance policy and Aetna responded by a letter which was attached as another exhibit to the stipulation. Aetna therein acknowledged receipt of a copy of the complaint filed by Ms. Ascascio against Richmond in which it was alleged that the damages she sustained were caused by the use of a product assembled and sold by Richmond but said that the Aetna policy did not provide coverage for claims involving products or completed operations hazards and that in any event the claimed damages exceeded the $100,000 policy limits. The letter further stated: "This Company will provide a defense for you as per the terms of the insurance policy, but this Company does not waive any of its Rights under the terms, conditions and provisions of the insurance policy.

Therefore, if a judgment is entered against you for damages that are not covered under the policy, this Company will not be responsible for that judgment."

After the Ascascio claim was settled, Aetna and Richmond stipulated that the coverage issue between them would be determined solely on the first cause of action in Ms. Ascascio's complaint which alleged that her injuries were the proximate result of the defendants' negligence.

At the time of trial Charles Bell, agent for Aetna, testified that he had handled Richmond's business insurance for a number of years before the time the policy in question was issued on June 25, 1968, and that at one time products coverage had been included. Mr. Bell testified that he dealt more with Mrs. Richmond than with anyone else when insurance matters were to be decided. A year or two before the policy in effect at the date of Ms. Ascascio's injuries was issued, Mrs. Richmond told Mr. Bell that they did not want products liability coverage. She said this was true because the premiums were based on gross receipts which required the auditing of their books. She said to him at that time: "Don't ever do that to us again."

Lonnie Richmond testified that he had told Mr. Bell that he wanted "full coverage" for his business and had been assured that that had been provided. He denied telling Mr. Bell that he did not like the insurance company auditing his books and that he would rather not have products coverage if it required auditing. He further testified that it was not his wife but he who personally handled business insurance matter while she did the accounting. He said that he recalled receiving the subject policy in the mail but that he merely put it away without reading it. Lonnie Richmond's wife was unavailable to testify because she died June 9, 1970.

The trial court, resolving conflicts in the evidence, found that prior to the issuance of the Aetna policy Richmond was paying premiums for products and completed operations coverage; that these premiums were calculated on an audit and gross receipt basis; and that the Aetna premiums for such coverage were calculated only on an audit and gross receipt basis. The court further found, inter alia, that Mrs. Richmond, wife and employee of Richmond, instructed Mr. Bell before the subject Aetna policy was issued that he should cancel the coverage for products and completed operations. As a consequence, such coverage was excluded from the policy subsequently issued to Richmond and these

exclusions were in effect at the time of Ms. Ascascio's purchase of skis and her eventual injuries. Finally, the court concluded that Aetna did not, by appearing and defending the litigation instituted by Ms. Ascascio, show any intention to relinquish its right to deny coverage; its conduct concerning the coverage under the policy showed a consistent intention to adhere to the exclusionary provisions.

## ISSUES

Richmond contends on appeal that (1) certain findings are unsupported by the evidence; (2) there was no finding that Mrs. Richmond had authority to limit insurance coverage; (3) Aetna is estopped to rely on exclusionary products and completed operations hazard clauses; (4) Aetna waived these exclusionary clauses; and (5) the exclusionary clauses do not immunize Aetna from liability for injuries due to Richmond's negligence.

## DISCUSSION

Richmond initially attempts to argue the propriety of the inferences to be drawn from certain evidence by disputing the correctness of various findings. The findings in question were based upon the resolution by the trial court of conflicts in the testimony of Richmond and that of the insurance agent Bell. The trial court apparently accepted the accuracy of Bell's testimony, thus resolving the conflict, and its determination is binding on appeal. ■ The appellate court ordinarily looks to the evidence supporting the successful party and disregards contrary showings (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920 [101 Cal.Rptr. 568, 496 P.2d 480]). Moreover, when two or more inferences can reasonably be deduced from the facts, the appellate court is without power to substitute its deductions for those of the trial court (*Brewer* v. *Simpson* (1960) 53 Cal.2d 567 [2 Cal.Rptr. 609, 349 P.2d 289]). Substantial evidence supports the trial court's findings in the present case.

■ Richmond further attacks the sufficiency of the findings to support the judgment insofar as he claims there was no evidence that Aetna was authorized to exclude products and completed operations coverage and no finding that Mrs. Richmond was authorized to order the cancellation of such coverage. There is, however, a finding that Mrs. Richmond "the wife of Lonnie Richmond and the employee of Lonnie Richmond dba Lonnie's Sporting Goods, specifically directed Charles Bell, the insurance agent, to cancel the products and completed

operations coverage from the defendant's policy." Agency is a determination on a question of fact (*Skyways Aircraft Ferrying Service, Inc. v. Stanton* (1966) 242 Cal.App.2d 272, 284 [51 Cal.Rptr. 352]). This finding, which is based on substantial evidence in the record as to Mrs. Richmond's status and her conversations with Charles Bell, is sufficient to establish both her authority and her instructions.

■   Richmond thirdly contends that Aetna is estopped to rely upon the exclusionary clauses because Richmond did not personally request a change in coverage, was not informed of any change, and was entitled to rely upon his understanding that when Aetna's agent said he was "fully covered," that included products and completed operations hazards. He claims that an insurer may not deny coverage on the basis of a policy provision which is contrary to its agent's representations where the insurance agent has given misleading, incorrect or incomplete and unqualified answers to questions by the insured relating to coverage and the insured has relied thereon (*Owen* v. *American Home Assurance Company of N. Y.* (N.D.Cal. 1957) 153 F.Supp. 928).

We note initially the finding that Mrs. Richmond as wife and employee of appellant Richmond instructed Aetna to cancel such coverage implicitly rejects Richmond's theory that the exclusion could be valid only on his personal request. The trial court also apparently rejected Richmond's testimony that Bell had represented that he was fully covered, which was denied by the Aetna agent, to support a claim that Aetna was estopped. Finally, the trial court rejected Richmond's claim that he did not know his wife gave the instruction to exclude the products liability coverage and his explanation that he did not know about the exclusion because when he received the policy he did not read it. "It is a general rule that the receipt of a policy and its acceptance by the insured without an objection binds the insured as well as the insurer and he cannot thereafter complain that he did not read it or know its terms. It is a duty of the insured to read his policy." (*Taff* v. *Atlas Assur. Co.* (1943) 58 Cal.App.2d 696, 703 [137 P.2d 483].) Here Richmond was charged with knowledge of the exclusions, and the evidence upon which he relied did not establish estoppel as to Aetna.

■   Richmond fourthly contends, nonetheless, that Aetna by its conduct waived the benefits of these exclusionary clauses. Waiver is a question of fact (*Kay* v. *Kay* (1961) 188 Cal.App.2d 214, 218 [10 Cal.Rptr. 196]). "[I]t is the general and quite well settled rule of law that the principles of estoppel and implied waiver do not operate to extend the

coverage of an insurance policy after the liability has been incurred or the loss sustained. [Citation.] . . . In 29A Am.Jur., Insurance, § 1135 (1960), the law and its rationale are explained as follows: [¶] 'The rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom, and the application of the doctrines in this respect is therefore to be distinguished from the waiver of, or estoppel to assert, grounds of forfeiture. . . .' " (*Insurance Co. of North America* v. *Atlantic National Ins. Co.* (4th Cir. 1964) 329 F.2d 769, 775; see also *Conner* v. *Union Automobile Ins. Co.* (1932) 122 Cal.App. 105 [9 P.2d 863].) Neither by its letter to Richmond nor by its defense of the Ascascio claim on behalf of Richmond did Aetna waive the exclusionary clauses (*Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co.* (1975) 53 Cal.App.3d 576, 584 [126 Cal.Rptr. 267]). Also, the facts showing the affirmative defense of waiver must be pleaded (*Goorberg* v. *Western Assurance Co.* (1907) 150 Cal. 510, 519 [89 P. 130]) and this Richmond failed to do.

■ Finally, appellant Richmond contends that because the issue of Aetna's liability on appeal is to be determined by the first count of the Ascascio complaint alleging the negligence of Richmond, the cause of her injuries was not covered by the products liability exclusion in Aetna's policy. The validity of the exclusionary clause is not in doubt. "An insurance company has the right to limit coverage, and when it has done so plainly and in harmony with the insured's reasonable expectations, the limitation must be respected. [Citations.]" (*Cravens, Dargan & Co.* v. *Pacific Indem. Co.* (1972) 29 Cal.App.3d 594, 600 [105 Cal.Rptr. 607].)

Richmond, however, argues that products hazard is inapplicable since the Ascascio injuries were not the result of defects in "goods or products manufactured, sold, handled or distributed by the named insured." Richmond points to the fact that the product was not manufactured by Lonnie's Sporting Goods and " '... . Any hazard with relation to products is excluded because it is the manufacturer's responsibility.' [Citation.]" (*Insurance Co. of North America* v. *Electronic Purification Co.* (1967) 67 Cal.2d 679, 686 [63 Cal.Rptr. 382, 433 P.2d 174].) It appears that in the present case bindings may have been selected and certainly they were adjusted by Richmond which thus contributed to the character of the product and the complete ski outfit. Assuming, arguendo, that the skis and bindings were exempt because not manufactured or sold as the products of Lonnie's Sporting Goods, the complaint alleges that Ms.

Ascascio's injuries were proximately caused by the fact that the bindings were defective in that they were "negligently designed, manufactured, installed, inspected, [or] adjusted."

The operations exclusion which pertains to operations closely connected with a product manufactured, sold or installed, refers to workmanship on products. (*Insurance Co. of North America* v. *Electronic Purification Co., supra,* 67 Cal.2d 679, 686.) This exclusion is described in language consistent with this definition in the policy issued to Richmond.[1]

Richmond relies upon the case of *Insurance Co. of North America* v. *Electronic Purification Co., supra,* 67 Cal.2d 679, in support of his contention. The court in that case found the injury, electrocution of the decedent apparently due to a defectively serviced underwater pool light, did not fall within the products liability exclusion clause of the policy covering a company which installed generators. The holding was based on the fact that rented products such as the generator were specifically not within the exclusion, and the further fact that installation of the light damaged during an acid bath given the pool was unrelated to generator installation and thus fell within the insurer's general liability. Similarly, negligence independent of the product sold does not fall within the products liability exclusions (see, e.g., *McGinnis* v. *Fidelity & Cas. Co.* (1969) 276 Cal.App.2d 15 [80 Cal.Rptr. 482]; *Hays* v. *Pacific Indem. Group* (1970) 8 Cal.App.3d 158 [86 Cal.Rptr. 815]).

The critical issue is whether the product was defective with respect to its intended use; if so, the fact that negligence of Richmond employees

---

[1]The completed operations hazard is defined therein as follows: " *'completed operations hazard'* includes *bodily injury* and *property damage* arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the *named insured.* 'Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

"(1) when all operations to be performed by or on behalf of the *named insured* under the contract have been completed,

"(2) when all operations to be performed by or on behalf of the *named insured* at the site of the operations have been completed, or

"(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

"Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed." (Italics in original.)

contributed to the existence of the defect does not exempt the cause of damages from the products liability exclusion. Only where negligent service of the insured constitutes "an act sufficiently removed from the quality of the product in question [will it] escape the exclusionary clause." (*Cravens, Dargan & Co.* v. *Pacific Indem. Co., supra,* 29 Cal.App.3d 594, 601.)

In this regard the observations of the Ninth Circuit Court of Appeals in a case where a similar issue was raised are worthy of note: "The fact that in addition to these circumstances the complaint alleges that faulty equipment was used or that the truck driver was negligent in certain respects in no sense negatives application of the exclusion endorsement otherwise established. In practically every case in which injury or damage is caused by the handling or use of a product, or by a defective condition in such product, the occurrence causing the injury or damage can be traced to some pre-existing negligence. Indeed, were this not so the injured person would have no basis for a tort claim against the insured. Thus, if the allegation of pre-existing negligence were to be regarded as controlling, the result would be to emasculate the product liability exclusion." (*Tidewater Associated Oil Co.* v. *Northwest Casualty Co.* (9th Cir. 1959) 264 F.2d 879, 882.)

### DISPOSITION

The judgment is affirmed.

Lillie, Acting P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 16, 1978.