**AMERICAN TRAILER SERVICE, INC., Appellant,**

**v.**

**The HOME INSURANCE COMPANY, Respondent.**

**No. C4–84–1452.**

Court of Appeals of Minnesota.

Feb. 12, 1985.

Paul G. Neimann, Wiese & Cox, Ltd., Minneapolis, for appellant.

George C. Hottinger, Chadwick, Johnson & Condon, P.A., Minneapolis, for respondent.

Heard, considered and decided by NIERENGARTEN, P.J., and FOLEY and CRIPPEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from summary judgment that claims based on negligent conduct fell within policy exclusions of coverage. We reverse.

## FACTS

Appellant American Trailer Service, Inc. was sued by Fritz Trucking, Inc. for negligence in failing to provide installation instructions for a fifth wheel assembly sold to and assembled by Fritz. The fifth wheel assembly broke after installation causing property damage.

Respondent Home Insurance Company refused American's demand to defend and indemnify under a business owners policy asserting that Fritz's claim fell within the policy's "products' hazard" and "completed operations" exclusions.

The trial court agreed and granted Home Insurance summary judgment. American appeals.

## ISSUES

1. Did the trial court err in finding the claims against American were within the "completed operations" exclusion?

2. Did the trial court err in finding the claims against American were within the "products hazard" exclusion?

## ANALYSIS

### I

A liability insurer's duty to defend is determined by comparing allegations in the complaint served on the insured with coverage afforded in the policy. *Grain Dealers Mutual Insurance Co. v. Cady*, 318 N.W.2d 247, 251 (Minn.1982). If any part of a claim falls within coverage, the insurer has a duty to defend. *Prahm v. Rupp Construction Co.*, 277 N.W.2d 389, 390 (Minn.1979). An insurer refusing to defend has the burden of proving all parts of a claim fall clearly outside coverage. *Id.*

It is not disputed that the damage sustained by Fritz is within the liability coverage afforded by the policy but for the exclusions in question. The applicable exclusions provide as follows:

### EXCLUSIONS OF PRODUCTS AND COMPLETED OPERATIONS

It is agreed that such insurance as is afforded under Section II of this policy does not apply to bodily injury or property damage:

(1) arising out of the "Named Insured's products" as defined, after physical possession thereof has been relinquished to others, or

(2) occurring away from premises owned by or rented to the Named Insured and arising out of "completed operations" as defined except bodily injury or property damage arising out of the existence of tools, uninstalled equipment or abandoned or unused materials.

The term "named insured's products" is defined as follows:

*"Named Insured's products"* means goods or products manufactured, sold, handled or distributed by any Named Insured or by others trading under his name, if the bodily injury or property damage arising out of such goods or products occurs after physical possession thereof has been relinquished to others; provided the Named Insured's product shall include:

(a) reliance upon a representation or warranty made at any time with respect to such products;

(b) any container thereof (other than a vehicle);

"Named insured's products" shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold. * *

The policy defines "completed operations" in the following manner:

*"completed operations"* means operations which have been completed or abandoned and includes reliance upon a representation or warranty made at any time with respect thereto; provided that the bodily injury or property damage arising out of such operations occurs away from premises owned by or rented to the Named Insured. "Operations" includes materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following items:

(a) when all operations to be performed by or on behalf of the Named Insured under the contract have been completed,

(b) when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed, or

(c) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed. * * *

Home Insurance Co. contends the "completed operations" exclusion applies to the seller of goods. The argument is without merit.

"The principal thrust of completed operations is the insured's provision of a service * * *." *Friestad v. Travelers Indemnity Co.*, 260 Pa.Super. 178, 182 n. 2, 393 A.2d 1212, 1213 n. 2 (1978). "Sales" is not among the examples listed in the exclusion. Prior to 1966, the completed operations exclusion required the involvement of the insured's products, "and since the involvement of the insured's product triggered as well the applicability of the products hazard exclusion, the effect of the majority view was that the complete operations hazard was superfluous." *Id.* at 184, 393 A.2d at 1214. Accordingly, the insurance policies were rewritten extensively so that the exclusions would not be redundant. The exclusion is obviously meant as a limitation of coverage for accidents due to defective workmanship occurring after the completion of work by the insured on a construction or service contract.

■ The exclusion was designed to be used in another context. It does not preclude coverage here.

### II

■ The principal thrust of the "products hazard" exclusion is the insured's manufacture or sale of a product. *Friestad*, 260 Pa.Super. at 182 n. 2, 393 A.2d at 1213 n. 2. As defined under the policy in question, "products hazard" requires the relinquishment of physical possession or control of a product coupled with bodily injury or damage arising out of such product. In this policy "named insured's products" includes sales. The trial court concluded that the only prerequisite to recovery is the relinquishment of physical possession. We disagree.

It has been unclear whether the phrase "arising out of" named insured's product includes every activity having to do with the sale of a product in addition to traditional product defect actions. This phrase is not defined in the insurance policy. However, the supreme court has construed it to mean originating from, having its origin in, growing out of, or flowing from. *Waseca Mutual Insurance Co. v. Nosak*, 331 N.W.2d 917, 920 (Minn.1983). In other words, there must be a causal connection between the damage sustained and the product sold. *Id.*

■ No illegal sale or defective product has been alleged, only negligence in provision of instructions. This type of negligence occurs occasionally in the course of business and is a risk for which businesses

buy general coverage. In *Florida Farm Bureau Mutual Insurance Co. v. Gaskins*, 405 So.2d 1013 (Fla.Dist.Ct.App.1981), the insured negligently delivered a herbicide rather than the requested insecticide. The herbicide totally destroyed the customer's crop when it was applied. In holding the insured's liability did not arise out of the products sold, the Florida Court of Appeals stated:

> [W]e conclude that the [completed operations and product's hazards] exclusions are not applicable under these facts because liability arose out of [the insured seller's] on-premises negligence in delivering the wrong product to [customer] and not out of the product delivered.

> The policy states that it does not apply to products hazards and completed operations. [Seller's] liability did not arise out of products or after it completed operations. After [customer] ordered the insecticide, [seller's] employee failed to notice that the herbicide which was delivered did not conform to what was ordered. It should be clear that [seller's] liability would not be within the products hazard exclusion because it did not arise out of products. The herbicide which was delivered was not the cause of the damage. The herbicide was merely the incidental instrumentality through which the damage was done. The proximate cause of the damage was [seller's] negligence in delivering the wrong product to [customer] and [seller's] liability arose out of the accident which occurred at the time of the negligent misdelivery.

*Id.* at 1014–15. Here, American Trailer's liability arose out of its negligence in failing to provide assembly instructions and not out of the product sold. Were the negligence more closely related to the product, such as defective design or workmanship, the products hazard exclusion would preclude coverage. On these facts, we hold the "product hazard" exclusion *does not* preclude coverage or indemnification.

### DECISION

Reversed.