710 P.2d 1082

**Gary BREWER, a single man, Plaintiff-Appellant,**

v.

**The HOME INSURANCE COMPANY, a New Hampshire corporation, Defendant-Appellee.**

**No. 1 CA–CIV 8072.**

Court of Appeals of Arizona, Division 1, Department D.

Aug. 27, 1985.

Petition for Review Denied Dec. 3, 1985.

**428**

Tucker & Jessen by Kenneth L. Tucker, Phoenix, for plaintiff-appellant.

Crampton, Woods, Broening & Oberg by Jan E. Cleator and Vincent A. Cass, Phoenix, for defendant-appellee.

1. A completed operations hazard exclusion applies to injuries and damage occurring after the insured's operations have been completed.

## OPINION

MEYERSON, Presiding Judge.

■ This case arises out of injuries sustained by plaintiff-appellant Gary Brewer when a large metal trash pipe designed and manufactured by Capitol Engineering Company (Capitol) collapsed due to inadequate vertical bracing. The issues raised on appeal are whether the "products hazard" and "completed operations hazard" exclusions in the comprehensive general liability insurance policy held by Capitol preclude coverage under the particular facts presented here. We conclude that the products hazard exclusion precludes coverage under the policy issued to Capitol by defendant-appellee Home Insurance Company (Home). Therefore, we need not reach Brewer's argument concerning the completed operations hazard exclusion.[1]

## I. FACTS

Capitol is engaged in the business of fabricating industrial sheet metal. Approximately 50% of its business is with the cotton industry. Capitol designs products to meet its customers' needs, fabricates the metal components of the product and provides its clients with installation drawings. Capitol does not install its products; the customer must either do the installation or arrange to have it done.

In 1979, Arizona Gins was engaged in remodeling its cotton gin. Arizona Gins hired Capitol to design and supply sheet metal pipe to collect fine pieces of cotton that are discarded during the process of cleaning the lint. Gary Brewer was one of several employees of Arizona Gins installing the pipe. A seventy-foot span of the pipe collapsed and fell on Brewer. The collapse was not due to any defect in the fabricated metal but due to the lack of vertical braces under the span of pipe.

Approximately one year later, Brewer brought a personal injury suit against Capi-

*McCaskill v. Welch,* 463 So.2d 942, 951 (La.Ct. App.1985); *see generally Annot.,* 58 A.L.R.3d 12 (1974).

tol. Capitol notified Home, its liability insurer, of Brewer's lawsuit and requested that Home defend the lawsuit in accordance with the terms of its policy. Home declined coverage and advised Capitol that it would not provide a defense in Brewer's lawsuit because of the products hazard and completed operations hazard exclusions contained in the policy. Capitol subsequently executed a *Damron* agreement[2] with Brewer, in which it assigned to Brewer its rights under the insurance policy. The case went to trial on the issue of damages only, and judgment in the amount of $400,000 was entered for Brewer.

Brewer then filed the present action against Home on the basis of his assigned rights. The trial court granted Home's motion for summary judgment and held that coverage was precluded by the products hazard and completed operations hazard exclusions. This appeal followed.

## II. PRODUCTS HAZARD EXCLUSION

Home contends that Brewer's injuries were not covered by the policy because they were explicitly excluded under the language of an endorsement to the policy in which Capitol agreed that:

> [S]uch insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage *does not apply* to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard.

(Emphasis added.) The term "products hazard"[3] is defined in the policy as follows:

> '[P]roducts hazard' includes bodily injury and property damage *arising out of the named insured's products* or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others.

(Emphasis added.) In addition, the policy defines "named insured's products" as "goods or products manufactured, sold, handled or distributed by the named insured."

The basis of Brewer's argument on appeal is that the products hazard exclusion is inapplicable because Capitol was negligent by failing to provide adequate installation advice or by failing to warn of the need for bracing during installation. Brewer contends that Capitol's negligence pertains to faulty engineering services and is therefore outside the scope of the products hazard exclusion. We disagree and conclude that the trial court correctly granted summary judgment in favor of Home because Brewer's injuries arose out of a product manufactured and sold by Capitol and thus were excluded from coverage by the products hazard clause.

Brewer is correct in suggesting that the purpose of the products hazard exclusion is to exempt products liability claims made against the insured from liability coverage. *See generally* 7A J. Appleman, *Insurance Law and Practice* §§ 4508–4508.05 (1979); Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know*, 50 Neb.L.Rev. 415 (1971). This is apparent from the wording of the exclusion itself. Brewer attempts to avoid the application of the exclusion by his contention that Capitol's omissions amounted to negligent engineering services rather than the sale of a defective product. After carefully reviewing the many cases which have touched upon this issue, we conclude that under the facts of this case, the design services supplied by Capitol to Arizona Gins were so intrinsically bound up in the sale of the fabricated steel itself that they were part of the product within the meaning of the products hazard exclusion.

For example, in *Aetna Cas. & Sur. Co. v. Richmond*, 76 Cal.App.3d 645, 143 Cal. Rptr. 75 (1977), the court found that a products hazard exclusion applied to the

**2.** *Damron v. Sledge,* 105 Ariz. 151, 460 P.2d 997 (1969).

**3.** This exclusion is identical to the standard policy language used in the insurance industry. *See* 11 G. Couch *Cyclopedia of Insurance Law* § 44:273 (2d ed. 1982).

sale and adjustment of ski bindings. A suit against the ski shop alleged that it negligently and carelessly adjusted the ski bindings thus causing the failure of the bindings to release. The court recognized that "negligence independent of the product sold does not fall within the products liability exclusions." *Id.* at 654, 143 Cal. Rptr. at 81. The court stated its ultimate conclusion this way:

> The critical issue is whether the product was defective with respect to its intended use; if so, the fact that negligence of [the ski shop] contributed to the existence of the defect does not exempt the cause of damages from the products liability exclusion. Only where negligent service of the insured constitutes 'an act sufficiently removed from the quality of the product in question [will it] escape the exclusionary clause.'

*Id.* at 654–55, 143 Cal.Rptr. at 81.

In *Buckeye Union Ins. Co. v. Liberty Solvents & Chemicals Co.,* 17 Ohio App.3d 127, 477 N.E.2d 1227 (1984), the insured was a "generator" of hazardous chemical waste products. The products leaked out of drums and polluted an area surrounding the waste disposal site. The court held that the products hazard exclusion was not applicable because the property damage was caused by the negligent mishandling of the waste product, not by any defective condition in the product itself. *Id.* at 135–36, 477 N.E.2d at 1237. Noting that the products hazard protection is synonymous with products liability protection, the court stated that in order for the exclusion to apply, "there must be a defective condition in the product itself which proximately causes the damage before the product haz-

ard exclusion will preclude coverage." *Id.* at 135, 477 N.E.2d at 1236.[1] Acknowledging the breadth of products liability law, the court stated that the "defective condition may be a design defect in the product; a manufacturing defect in the product; or in the case of an inherently dangerous or unavoidably unsafe product, a failure to provide adequate warnings." *Id.* at 135, 477 N.E.2d at 1236.

■ As the court in *Buckeye Union Ins. Co. v. Liberty Solvents & Chemicals Co.* indicated, failure to warn cases are ordinarily included within the products hazard exclusion.[5] For example, in *Viger v. Commercial Ins. Co.,* 707 F.2d 769 (3d Cir. 1983), the plaintiffs obtained a consent judgment against a retail fish store after eating fish which was contaminated. The defendant assigned to the plaintiffs its rights under its insurance policy. The trial court concluded that the products hazard exclusion did not apply because the plaintiffs were complaining of a negligent failure to warn. The court of appeals reversed because "the injury was caused by a defective product sold by the insured and . . . the alleged failure to warn related to the product defect." *Id.* at 773. The court stated that the products hazard exclusion "cannot be rendered meaningless by framing the claim in terms of a failure to warn." *Id.* The court noted that when the "alleged failure to warn is unrelated to sale of a defective product, the 'products hazard' and 'completed operations' exclusions are inapplicable." *Id.*

A similar result was reached in *K–C Mfg. Co. v. Shelby Mut. Ins. Co.,* 434 So.2d 1004 (Fla.Dist.Ct.App.1983). In that case, the insured brought suit against its insurer

---

**4.** A similar rationale was employed by the court in *Florida Farm Bureau Mut. Ins. Co. v. Gaskins,* 405 So.2d 1013 (Fla.Dist.Ct.App.1981). Gaskins sold the wrong herbicide to a customer and as a result an entire tobacco crop was destroyed. The court concluded that the products hazard exclusion did not apply because the "proximate cause of the damage was [Gaskins's] negligence in delivering the wrong product." *Id.* at 1015.

At first glance, it might appear that these courts are making rather artificial distinctions. But on closer scrutiny, it is clear that the courts in *Buckeye Union Ins. Co.* and *Gaskins* recog-

nized that the product in each case performed exactly as it should, without any defect. The claims of negligence were completely unrelated to any defect in the product. *General Ins. Co. v. Crawford,* 635 S.W.2d 98, 102 (Tenn.1982). This can be contrasted with the present appeal in which the trash pipe did not perform as expected (it collapsed) because of negligent design.

**5.** The failure to warn of a dangerous use of a product is commonly recognized as a products liability claim. *Brown v. Sears, Roebuck & Co.,* 136 Ariz. 556, 563, 667 P.2d 750, 757 (App.1983).

seeking coverage for a claim based upon injuries allegedly resulting from the design and manufacture of a go-cart. Among the claims made against the insured was the contention that it failed to warn the victim of defects when it knew or should have known of such defects and the dangerous condition created. The court found the products hazard exclusion was applicable stating:

> [E]ven though the complaint does contain an allegation of negligent failure to warn, it effectively alleges a bodily injury arising out of either the named insured's product or reliance upon a necessarily implied warranty with respect to its fitness. The negligence alleged is clearly that contemplated by the exclusion.

*Id.* at 1007. *E.g., Cravens, Dargan & Co. v. Pacific Indem. Co.*, 29 Cal.App.3d 594, 601, 105 Cal.Rptr. 607, 612 (1972).

Several courts have found that a failure to warn claim is outside the products hazard exclusion. The theme linking these cases is that the product sold actually performed in the manner which was intended.[6] For example, in *Cooling v. United States Fid. & Guar. Co.*, 269 So.2d 294 (La.Ct. App.1972), the claim against Cooling, a vendor of diesel engines, was that it failed to warn of the need for using certain safety devices with its products. The court declined to apply the products hazard exclusion noting that there was neither a defective product sold nor faulty workmanship involved. *Id.* at 297. And in *Templet v. Goodyear Tire & Rubber Co.*, 341 So.2d 1248 (La.Ct.App.1976), products hazard protection was not applicable because the claimant alleged that the seller failed to warn him of the dangers associated in mounting a tire from the wrong side of the rim.

The foregoing cases establish the following principles. Products hazard coverage is intended to protect the manufacturer or seller of goods from claims for injury and damage arising out of the use of the insured's products. The risk which is being insured is that the product will not perform in the manner expected. If the product works as it is supposed to, but through other negligence the insured's product causes injury or damage, there is no coverage. Thus, where products hazard coverage is excluded, the insurer is not responsible for the failure of the insured's products or goods to work as anticipated.

In this case, Brewer was injured when the trash pipe designed and manufactured by Capitol collapsed due to inadequate bracing. The failure of Capitol to provide adequate installation drawings and its failure to warn of the need for bracing during installation are acts which are directly related to the product itself. Capitol's negligence caused the pipe to collapse and therefore the pipe did not perform in the manner intended. The accident occurred as a result of the faulty design of its product and thus the bodily injuries suffered by Brewer arose out of Capitol's product.

Brewer's contention that the service aspect of Capitol's product can be segregated to defeat the products hazard exclusion would, if adopted, completely nullify the clause. Underlying the sale of virtually any assembled product is some design engineering. If a product fails because of faulty design, it is nonetheless a defective product. Behind a myriad of product defects is the failure of someone to properly do his or her job. Where the loss is caused by defective goods or products, the cry, "human error," cannot be made to transform a products liability claim into a case of professional negligence. Certainly, there are personal service industries, in which the insured does not engage in the manufacture or sale of a product. *Prosser Comm'n Co. v. Guaranty Nat'l Ins. Co.*, 40 Wash.App. 819, 700 P.2d 1188 (1985) (products hazard exclusion does not apply to the service of bringing buyers and sellers of cattle together to consummate a sale). But we are compelled to conclude that here, Capitol produced a product. Although design services were an element of that product, the faulty design caused the product to fail, and therefore the engineer-

**6.** See Note 4, *supra.*

ing of the product cannot be segregated from the product itself.

The problem of determining which negligence is related to the product and which negligence is not related has led some courts to adopt a rather expansive application of the products hazard exclusion. *E.g., Hagen Supply Corp. v. Iowa Nat'l Mut. Ins. Co.*, 331 F.2d 199 (8th Cir.1964). In *Hagen Supply Corp.*, a tear gas device discharged injuring a minor. The asserted negligence was the selling of the product through the mail in violation of a state statute. Under the rationale of *Cooling v. United States Fid. & Guar. Co.*, the exclusion would be inapplicable because the product performed in the manner intended. But the *Hagen Supply Corp.* court found the exclusion applicable concluding that any act or omission pertaining to the sale of the product would fall within the exclusion.

In this opinion we need not address the breadth of the products hazard exclusion. We hold only that negligent instructions pertaining to the installation of a product[7] and a failure to warn of danger in connection with the installation of a product are claims falling within the products hazard exclusion.

Affirmed.

GRANT and HAIRE, JJ., concur.

---

**7.** We have found one recent case which might appear to be contrary to our conclusion. *American Trailer Serv. v. Home Ins. Co.*, 361 N.W.2d 918 (Minn.Ct.App.1985). American Trailer Service was sued for negligence in failing to provide any installation instructions for a wheel to be assembled by its customer. The wheel broke causing property damage. The court concluded that the products hazard exclusion was inapplicable because American Trailer's liability arose out of its "negligence in failing to provide assembly instructions and not out of the product sold." *Id.* at 921. The court went on to state that "[w]ere the negligence more closely related to the product, such as defective design or workmanship, the products hazard exclusion would preclude coverage." *Id.*

On the surface, there would appear to be little distinction between the failure to provide any installation instructions and the failure to supply correct instructions. Although the court did not fully analyze this point, we think these two situations can be analyzed as follows. The negligence in failing to provide a customer with any installation advice is unrelated to whether the product is faulty. It is the type of ordinary negligence associated with the general risks of doing business. Incorrect instructions, on the other hand, are more closely connected to the creation of the product itself and in that way are properly subsumed in the products hazar[d] exclusion.