746 P.2d 1

Joseph ABBOTT and Billie Abbott, his wife, and Arizona Precast Company, Inc., an Arizona corporation, Plaintiffs–Appellees,

v.

Michael John MEACOCK, Lead Underwriter, Garnishee Defendant–Appellant.

No. 1 CA–CIV 8985.

Court of Appeals of Arizona, Division 1, Department C.

May 28, 1987.

Reconsideration Denied Aug. 24, 1987.

Review Denied Dec. 1, 1987.

Michael J. Lyding, Phoenix, for plaintiffs-appellees.

Dake, Hathaway & Swan, P.A. by Milton W. Hathaway, Jr., Phoenix, for garnishee defendant-appellant.

## OPINION

WILLIAM P. FRENCH, Judge Pro Tem.

Insurer Meacock appeals from a judgment entered against it in a garnishment proceeding. The court found that Meacock was liable under a policy of insurance issued to its insured, Tire Mileage, Inc., for a judgment entered against the insured in a negligence action.

The action arose from an accident which occurred on May 30, 1980. The left front tire on a tractor-trailer rig failed, resulting in property damage to the rig and load owned by plaintiff Arizona Precast Company, Inc.; loss of use of the rig; and personal injuries to plaintiffs Joseph and Billie Abbott, the occupants of the rig. Following a nonjury trial, the court found that the accident happened because the tire which failed was too small, and that Tire Mileage was negligent in recommending and installing the tire. The court awarded judgment against Tire Mileage in the amount of $284,632 for Precast, $52,500 for Joseph Abbott and $4,500 for Billie Abbott, together with interest and costs.

At the time of the accident, Tire Mileage was insured by two companies. Mission Insurance Company provided comprehensive general liability coverage, completed operations coverage, and products liability coverage excluding "[n]ew and [r]ecapped

tires." The Mission policy was to be primary coverage.

Meacock, lead underwriter for Lloyd's of London, provided an Underwriter's policy with liability coverage for bodily injury and property damage:

[p]rovided the same is caused by accident and arises out of the possession, consumption, use or handling elsewhere than upon the premises of the Assured ... of only those products of the Assured listed in the Schedule manufactured, sold or distributed by the Assured ... and after physical possession of such products has been relinquished to others.

The only products listed in the schedule, and therefore the only products covered by the policy, were "[n]ew and [r]ecapped tires."

Prior to the negligence action, plaintiffs entered into a *Damron* agreement with Tire Mileage and Mission Insurance Company as authorized by *Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969). As part of the agreement, the plaintiffs agreed to seek satisfaction of any judgment obtained against Tire Mileage by proceeding against the Underwriter's policy rather than against Tire Mileage or Mission Insurance Company in return for certain concessions and guarantees. It was agreed that in any event, Mission Insurance Company would not be liable for more than $35,000. After judgment was entered, plaintiff served a writ of garnishment on Lloyd's of London. Lloyd's answered, denying that it owed any money under its policy, and plaintiffs objected and sought hearing. It was stipulated thereafter that the underwriter of the policy, Michael John Meacock, be substituted in the proceeding for Lloyd's of London.

The trial court had to determine whether the Underwriter's policy provided coverage and, if it did, whether the Mission policy also provided coverage, since the Mission policy coverage was primary in the event of duplicative coverage. The trial court concluded on the basis of *Brewer v. Home Insurance Co.*, 147 Ariz. 427, 710 P.2d 1082 (App.1985), and other authorities that:

[T]he negligence of the insured in selecting, recommending and installing a tire which was not suitable for the use intended by the buyer or the seller is the type of negligence which is so inextricably intertwined with the product itself that this is a 'products' case rather than a 'negligence' case as those terms are used in connection with product hazards coverage or exclusion questions. Accordingly, it is the Court's conclusion that Mission's policy excludes coverage and Underwriter's policy provides coverage.

Meacock appeals from the judgment and the denial of its motion for new trial.

■ The first issue raised by appellant is whether the Underwriter's policy coverage is limited to injuries caused by a defective product or whether it extends to injuries caused by its insured's sale of a product which is non-defective in manufacturer's design but unfit for its intended use. Appellees point out that nothing in the policy expressly states that coverage applies only when a product defect causes an injury. The question is whether this interpretation of the policy is implied.

Both parties acknowledge that the intention of the parties to an insurance contract is controlling. *Dairyland Mut. Ins. Co. v. Andersen*, 102 Ariz. 515, 517, 433 P.2d 963, 965 (1967); *Reserve Ins. Co. v. Staats*, 9 Ariz.App. 410, 412, 453 P.2d 239, 241 (1969). The facts presented show that it was everyone's intention that the Underwriter's policy be a "product liability" policy. Each year when it was time for renewal, Lloyd's of London, through the Director of Insurance Services of the National Tire Dealers & Retreaders Association, Inc., would notify Tire Mileage by letter that it was time to renew its "products liability insurance." Tire Mileage President Paul Siebert and his insurance agent, Sheldon H. Schusler, in their deposition testimony both recognized the policy as being one for "products liability." Siebert stated his belief that the policy covered his company for injuries resulting from product failure but indicated he had given no thought to whether that would include failure because of improper size of the tire for a particular job.

A product can be inadequate, and therefore defective, for the particular use for which it has been recommended. *See, e.g., Cravens, Dargan & Co. v. Pacific Indem. Co., Inc.,* 29 Cal.App.3d 594, 601, 105 Cal. Rptr. 607, 612 (1972). As noted in 7A J. Appleman, *Insurance Law and Practice* § 4508.01, at 351 (Berdal ed. 1979), products liability insurance covers damages caused where the insured has selected the wrong product to meet a customer's needs in violation of an implied warranty of fitness under the Uniform Commercial Code. *See* A.R.S. § 44–2332.

In *Brewer,* 147 Ariz. at 431, 710 P.2d at 1086, this court commented on the protection provided by products hazard coverage:

> Products hazard coverage is intended to protect the manufacturer or seller of goods from claims for injury and damage arising out of the use of the insured's products. The risk which is being insured is that the product will not perform in the manner expected. If the product works as it is supposed to, but through other negligence the insured's product causes injury or damage, there is no coverage. Thus, where products hazard coverage is excluded, the insurer is not responsible for the failure of the insured's products or goods to work as anticipated.[1]

Obviously, a product "designed" or "manufactured" defectively may not perform in the manner expected. Similarly, a product which has been "recommended for an improper use" may not perform in the manner expected by the consumer. For the foregoing reasons, we conclude that products liability coverage would apply not only where the product has been designed or manufactured defectively, but also where the product has been recommended and installed for an improper use.

■ We next must decide whether the trial court was correct in determining that the products liability coverage provided in the Underwriter's policy applies to the injuries occurring in this case. We start by examining our decision in *Brewer,* which was relied upon by the trial court.

In *Brewer,* a large metal trash pipe designed and manufactured by Capitol Engineering Company collapsed due to inadequate vertical bracing, injuring the plaintiff, Gary Brewer. The negligence involved in that case was Capitol's failure to provide adequate installation drawings and its failure to warn of the need for bracing during installation. The court recognized the issue as one of determining whether the negligence was related to the product or was independent of the product. As in most of the cases where this issue has been faced, it was necessary to determine whether a products liability "exclusion" applied, but we note that the reasoning is identical to what would be used to determine whether products liability "coverage" applies where such a determination is required. After determining that the accident occurred as a result of Capitol's faulty design of its product, we held that, "under the facts of this case, the design services supplied by Capitol to Arizona Gins were so intrinsically bound up in the sale of the fabricated steel itself that they were part of the product within the meaning of the products hazard exclusion." 147 Ariz. at 429, 710 P.2d at 1082.

As the California court aptly stated in *Aetna Casualty & Surety Company v. Richmond:*

> [N]egligence independent of the product sold does not fall within the products liability exclusions.

> The critical issue is whether the product was defective with respect to its intended use; if so, the fact that negligence of Richmond employees contributed to the existence of the defect does not exempt the cause of damages from the products liability exclusion. Only where negligent service of the insured constitutes 'an act sufficiently removed from the quality of the product in question [will it] escape the exclusionary clause.'

---

1. We do not mean to suggest by quoting this language that products hazard coverage is limited to cases of product liability determinable under the consumer expectation test and does not also extend to cases determinable under the risk/benefit balancing test. *Dart v. Wiebe Mfg. Inc.,* 147 Ariz. 242, 709 P.2d 876 (1985).

76 Cal.App.3rd 645, 654–55, 143 Cal.Rptr. 75, 81 (1977) (citations omitted).

In *Hagen Supply Corporation v. Iowa National Mutual Insurance Company,* 331 F.2d 199 (8th Cir.1964), injuries had been caused by a nondefective tear gas device which negligently had been sold through the mail in violation of a state statute. The court held that any act or omission pertaining to the sale of the product would fall within the exclusion.

In *Brewer,* the product did not perform as expected due to defective design, causing the product hazard exclusion to come into play. Therefore, in that case we found it unnecessary to determine whether products hazard coverage would ever protect against injuries caused by nondefective products and conversely whether a products hazard exclusion would ever preclude coverage for injuries caused by nondefective products. In this case, for similar reasons, it is again unnecessary to answer that particular question.

The negligence in recommending the tire affected the quality of the product. The product did not perform in the way in which it was expected by the consumer. It was "defective" for the purpose for which it was recommended and installed, and was therefore subject to the products liability coverage under the Underwriter's policy.

■ The final issue for us to determine is whether the Mission policy also provided coverage for these injuries. We find that it did not. The Mission policy expressly excluded products liability coverage for "[n]ew and [r]ecapped tires." Under the same rationale utilized above, the products liability exclusion in the Mission policy excluded liability for the injuries that occurred when the tire recommended by Tire Mileage did not perform as expected by the consumer.

For the reasons stated herein, we uphold the trial court's determination that the Underwriter Michael John Meacock was liable for the judgment entered against the insured.

CORCORAN, P.J., Department C, and CONTRERAS, J., concur.

NOTE: WILLIAM P. FRENCH was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. Art. VI, § 3 and A.R. S. §§ 12–145 to –147.