**Stephen J. AUGUST, M.D., Plaintiff,**

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE, CO., et al., Defendants.**

**Case No. CV09–01951 DMG (SHx).**

United States District Court, C.D. California.

March 23, 2011.

---

forth below, Plaintiff's Motion is GRANTED.

## I.

### PROCEDURAL HISTORY

Plaintiff filed his Complaint on March 23, 2009 and his First Amended Complaint on August 11, 2009. Plaintiff alleges two causes of action: (1) breach of contract and (2) breach of the covenant of good faith and fair dealing.

On January 28, 2011, Plaintiff filed the subject Motion for Partial Summary Judgment. On February 4, 2011, Defendants filed an Opposition. Plaintiff filed a Reply on February 11, 2011.

Richard H. Friedman, Henry G. Jones, James A. Hertz, Friedman Rubin, Bremerton, WA, Michael J. Bidart, Shernoff Bidart Echeverria LLP, Claremont, CA, for Plaintiff.

Edwin A. Oster, Jenny H. Wang, Barger and Wolen LLP, Irvine, CA, for Defendants.

## ORDER RE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF CONTRACT AND EQUITABLE ESTOPPEL

DOLLY M. GEE, District Judge.

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment on Breach of Contract and Equitable Estoppel [Doc. # 108]. The Court held a hearing on March 11, 2011. Having duly considered the respective positions of the parties, as presented in their briefs and at oral argument, the Court now renders its decision. For the reasons set

## II.

### FACTUAL BACKGROUND

The facts material to the Court's decision are undisputed by the parties.

#### A. The Disability Insurance Policy

In 1980, Plaintiff applied for and purchased a disability insurance policy from Provident Life and Accident Insurance Company ("PL & A")[1], Policy No. 6PC–453240 (the "Policy"). (Pl.'s Statement of Uncontroverted Facts ("Pl.'s Facts") ¶ 1; Defs.' Statement of Genuine Issues ("Defs.' Issues") ¶ 1.)

The Policy provides for Total Disability benefits as follows:

TOTAL DISABILITY–ACCIDENT OR SICKNESS: If Injuries or Sickness result in Total Disability, the Company will pay periodically during the continuance of such Total Disability, indemnity at the rate of the Monthly Benefit for Total Disability shown in the *Policy*

1. PL & A merged with Paul Revere Life Insurance Company in 1997 and with Unum Life Insurance Company of America in 1999. (Riggieri Decl. ¶ 1.) PL & A, Unum, and Paul Revere are referred to herein collectively as "Defendants."

*Schedule* and commencing on the applicable specified day, but indemnity will not be paid beyond the applicable Maximum Benefit Period shown in the Policy Schedule during a period of disability. Indemnity will not be paid for disability during any period of time that you are not under the care and attendance of a Physician.

(Decl. of Henry G. Jones ("Jones Decl."), ¶ 2, Ex. A at 9.)

The Policy defines "Total Disability" as follows:

(a) Until the date you attain age 65, or until the date indemnity for total disability has been paid during a period of disability under this policy for 5 years, whichever is later, "Total Disability" means your inability to perform the duties of your occupation.

(b) During the continuance of a period of disability beyond the later of either of the two dates named in (a) above, "Total Disability" means your inability to engage in any gainful occupation in which you might reasonably be expected to engage because of education, training, or experience, and with due regard to your vocation and earnings at the beginning of disability.

Nothing in this definition shall be construed to extend or limit the maximum periods for which indemnity for disability is payable under this policy."

(Jones Decl., ¶ 2, Ex. A at 26.)

The Policy Schedule attached to the Policy provides that the "MONTHLY BENEFIT FOR TOTAL DISABILITY" is:

ACCIDENT OR SICKNESS—$5,000.00 COMMENCING ON THE 31ST DAY OF TOTAL DISABILITY (NO BENEFITS ARE PAYABLE FOR THE FIRST 30 DAYS OF TOTAL DISABILITY). BENEFITS ARE PAYABLE FOR AS LONG AS THE APPLICABLE MAXIMUM BENEFIT PERIOD SET FORTH BELOW.

(Jones Decl. ¶ 2, Ex. A at 17) (emphasis in original).

The "MAXIMUM BENEFIT PERIODS WHILE TOTALLY DISABLED" are described as follows:

ACCIDENT—TOTAL DISABILITY COMMENCING PRIOR TO YOUR 65TH BIRTHDAY.................FOR LIFE SICKNESS—TOTAL DISABILITY COMMENCING PRIOR TO YOUR 65TH BIRTHDAY.................TO YOUR 65TH BIRTHDAY, BUT NOT LESS THAN 24 MONTHS

(Jones Decl. ¶ 2, Ex. A at 17) (emphasis in original).

## B. *Plaintiff's 1995 Skiing Accident*

Plaintiff was an ophthalmologic surgeon. (Pl.'s Facts ¶ 7; Defs.' Issues ¶ 7.) In Spring 1995, Plaintiff was involved in a skiing accident (the "1995 Accident") at Heavenly Valley ski resort in Lake Tahoe, Nevada. (Jones Decl., ¶¶ 45, Ex. C, Deposition of Stephen J. August ("August Depo.") at pp. 36–37; Ex. D, Deposition of Mary August at pp. 16–17.) While Plaintiff was skiing, he fell and "hyperflexed" his neck. (Jones Decl., ¶ 4, August Depo. at 36.) Plaintiff self-treated the resulting pain. (*Id.* at 37.)

Several months later, Plaintiff began to suffer neck pain and other symptoms, which were still present in Spring 1996. (Pl.'s Facts ¶¶ 9–10; Defs.' Issues ¶¶ 9–10.) In June 1996, Plaintiff sought treatment from Dr. Frederic Edelman, a neurosurgeon. (Pl.'s Facts ¶¶ 9–10; Defs.' Issues ¶¶ 9–10.) On June 19, 1996, Dr. Edelman performed surgery and Plaintiff was thereafter able to return to work as an ophthalmologist. (Pl.'s Facts ¶¶ 10, 11; Defs.' Issues ¶¶ 10, 11.) Plaintiff's symptoms, however, did not subside after the surgery. He subsequently filed a claim for total

disability benefits under the Policy. (Pl.'s Facts ¶ 11; Defs.' Issues ¶ 11.)

### C. Plaintiff's 1997 PL & A Claim Submission

On January 22, 1997, Plaintiff notified PL & A of his intent to file a disability claim. (Pl.'s Facts ¶ 12; Defs.' Issues ¶ 12.) On his Statement of Claim, which PL & A received on February 14, 1997, Plaintiff described his "current impairment" as follows:

> Spinal injury caused spinal compression relieved by surgical decompression in June 1996 left residual spinal cord dysfunction affecting proprioception and limiting fine motor activities required in all of my professional activities.

(Jones Decl. ¶ 10, Ex. I.) Question 15 of the Statement of Claim states, "When did the accident occur (if applicable)?" In response, Plaintiff indicated "Spring 1995." Question 16 of the Statement of Claim states, "When did sickness commence (if applicable)?" In response, Plaintiff stated "N/A." (Id.) In response to Question 23, which asks, "Dates of total and complete inability to work ...," Plaintiff indicated 6/14/96 to Present. (Id.)

Plaintiff's Statement of Claim was accompanied by an Attending Physician's Statement, on which Dr. Frederic L. Edelman stated as follows:

> 4. When did symptoms first appear or accident happen? Spring 1995
>
> 5. How did this condition develop (if applicable)? Spring accident—Fall

(Jones Decl. ¶ 10, Ex. I.)

Plaintiff also submitted a Notice of Claim, on which Plaintiff indicated "spinal injury" in identifying the "Nature of Sickness or Injury." (Jones Decl. ¶ 10, Ex. I.)

The Accident Claim Department's "Initial Claim Data" printed on January 23, 1997 shows that PL & A coded Plaintiff's benefits to expire on April 13, 2008—Plaintiff's 65th birthday—although no coverage code was indicated at that time. (Pl.'s Facts ¶ 13; Defs.' Issues ¶ 13.) The Accident Claim Department's "Initial Claim Data" printed on November 7, 1997 also noted that Plaintiff's benefits were set to expire on April 13, 2008, and additionally indicated "32 TOTAL DISA SICKNESS" as a coverage code. (Decl. of Henry G. Jones in Sup. Of Pl.'s Reply ("Jones Reply Decl.") ¶ 2, Ex. 1.) Yet, according to Defendants, PL & A did not evaluate whether Plaintiff's loss was due to injury or sickness in 1997. (Jones Decl. ¶ 15, Ex. N; Deposition of Scott Joseph Shea ("Shea Depo.") at pp. 111–113; Decl. of Jenny Wang ("Wang Decl.") ¶ 2, Ex. A; Shea Depo. at pp. 32–33, 75.) Defendants have no explanation why Plaintiff's claim, although submitted as an accident claim, would have been initially coded as a sickness claim before any investigation had been conducted. (Jones Decl. ¶ 9, Ex. H; Deposition of Steven P. Carlson ("Carlson Depo.") at pp. 28–30.)

Defendants accepted Plaintiff's claim and paid it without explicitly disputing the cause of injury.

### D. Plaintiffs Paul Revere Life Insurance Disability Claim

Plaintiff also filed a disability claim ("Paul Revere Claim") under his policy with Paul Revere Life Insurance Company ("Paul Revere"), which Paul Revere received on February 14, 1997. (Pl.'s Facts ¶ 18; Defs.' Issues ¶ 18.) On his Paul Revere Claim, in section 10, which contains prompts for "IF ACCIDENT" and "IF SICKNESS," Plaintiff stated under "IF ACCIDENT" as follows:

> SPINAL INJURY RESULTING FROM FALL WHILE SKIING IN LAKE TAHOE NEVADA IN SPRING OF 1995.

(Jones Decl. ¶ 11, Ex. J.) Under "IF SICKNESS," Plaintiff stated "N/A." (Id.)

On the accompanying Attending Physician's Statement, Dr. Edelman indicated "Cervical disc rupture" in response to "Primary Diagnosis" and "Spring 1995" in response to "When did symptoms first appear or accident happen?" (Jones Decl. ¶ 11, Ex. J.)

### E. *PL & A's 1997 Documents Indicate "Accident"*

Plaintiff executed a release dated February 27, 1997 that authorized the release of medical records and information to PL & A. (Jones Decl. ¶ 13, Ex. L.)

On February 27, 1997, Ms. Leigh Varnell, PL & A Claims Examiner, interviewed Plaintiff, during which she states:

> I asked him to discuss the 1995 accident which he is stating that his disability is related to. He said he and his doctor are both assuming that his current condition is related to that injury. He says he fell skiing in late March, 1995. His head was buried in the snow and he injured his neck.

(Jones Decl. ¶ 14, Ex. M.)

A PL & A Field Service Request dated February 28, 1997 checked the box denoting "Accident" as opposed to "Death" or "Sickness," and identified the "Date of Loss" as June 14, 1996, the date of the ski accident. (Jones Decl. ¶ 12, Ex. K.)

In March 1997, PL & A's parent company, Provident Companies, acquired Paul Revere and thereafter had effective control over both wholly owned subsidiaries, PL & A and Paul Revere. (Pl.'s Facts ¶ 23; Defs.' Issues ¶ 23.) On April 18 and April 21, 1997, Ms. Varnell discussed Plaintiff's disability claim with Paul Revere representatives. (Pl.'s Facts ¶ 24; Defs.' Issues ¶ 24.)

On Paul Revere's Index Inquiry form, dated April 21, 1997, the date of disability was "Spring/95," the location of the accident was "Lake Tahoe—Nevada," and the nature of the disability was "Neck/Back

Injury." (Jones Decl. ¶ 18, Ex. Q.) Paul Revere's revised Index Inquiry form, dated June 16, 1997, reflected the same information. (Jones Decl. ¶ 19, Ex. R.)

Paul Revere's notes from a telephone call on June 16, 1997 with Gerry Smith, Ms. Varnell's supervisor at PL & A, indicate that Mr. Smith explained to Plaintiff the "relationship between Provident & P.R. & that handling will be similar." (Jones Decl. ¶ 20, Ex. S.)

A Field Representative Report dated July 17, 1997 and prepared by Hal Dannov states:

> This claimant explained that he needed to go back and describe his history, going back a few years ago when he had a slip and fall accident while skiing the Mogul Run at Heavenly Ski Resort in Lake Tahoe. The fall involved his neck and it caused the feeling of electrical impulses throughout his body. This symptomatology spontaneously went away and he did not seek any medical care afterwards, feeling fine up until the Spring of 1996 when he began noticing having trouble walking and some hand coordination problems. That is when he sought out consultation with Dr. Edelman, a Neurosurgeon, which eventually resulted in him having surgery for cervical myelopathy and ruptured discs.

(Jones Decl. ¶ 3, Ex. B at 46.) The Field Representative Report recommended a "comprehensive Home Office medical review, including consideration for Independent Medical Exams, as they deem appropriate, pending the [FCE] report receipt." (*Id.* at 52.)

The UCLA Medical Center completed an independent Functional Capacity Evaluation ("FCE") on July 16, 1997, reflecting that Plaintiff's "Date of Injury" was "Spring '95" resulting from "falling while skiing which contributed to a progression in neck symptoms." (Jones Decl. ¶ 21, Ex.

T.) After PL & A received the FCE report, it did not conduct a "comprehensive Home Office medical review," nor did it conduct any "Independent Medical Exams." (Pl.'s Facts ¶ 32; Defs.' Issues ¶ 32.)

Paul Revere's Roundtable Review Sheets dated July 28, 1997 and October 7, 1997 indicate "Provident $5,000 30EP Lifetime" and "Provident $5,000/Lifetime" under "OTHER COVERAGE." (Jones Decl. ¶¶ 22, 23, Exs. U, V.)

Plaintiff submitted at least 26 monthly progress reports to Defendants, each of which identified the cause of injury as "Accident" rather than "Sickness." (Jones Decl. ¶ 24, Ex. W.)

On July 14, 1999, Plaintiff's file was transferred to the Special Handling Unit ("SHU"). (Pl.'s Facts ¶ 37; Defs.' Issues ¶ 37.) The SHU referral reflected a diagnosis of "cervical myelopathy/secondary to ruptured cervical disk." (Jones Decl. ¶ 26, Ex. Y.)

## F. 2006 Notice of Expiration

In a letter dated October 13, 2006 (the "2006 Letter"), Defendants stated as follows:

> Claim # 52–00453240–001 provides a monthly base indemnity of $5,000 and a $1,416 Cost of Living Adjustment benefit. Cost of Living Adjustments occur annually in June and will continue until Age 65. After Age 65 the Cost of Living benefit will be frozen. The benefits under this policy will continue, as long as you continue to meet the definition of total disability, as outlined in your contract. If *you continue to meet the definition of total disability, the maximum benefit period is scheduled to expire on June 18, 2008.*

(Jones Decl. ¶ 27, Ex. Z) (emphasis added).

In a May 31, 2007 Financial Services Committee Form, Defendants stated:

The insured claim on claim in 6/1996 as a result of a surgical decompression of his spine. The results of surgery limited the insured fine motor skil;ls [sic], thus a concern with his work of an ophthalmic surgeon. (original accident occurred during a skiing accident).

(Jones Decl. ¶ 29, Ex. BB.)

In a letter to Plaintiff dated May 31, 2007, Defendants informed Plaintiff that it would not offer a lump sum buy-out on his PL & A policy, but did not inform Plaintiff at that time that his claim was being paid under the sickness provision of the Policy. (Pl.'s Facts ¶ 46; Defs.' Issues ¶ 46.)

## G. Defendants' 2007 Determination

In a letter dated August 23, 2007, Scott Shea wrote as follows, on behalf of Defendants:

> You have advised us that you believe your loss was due to accident/injury. As you know, we have been paying benefits under your Provident Life and Accident policy under the policy's sickness provisions. At this time, we will evaluate whether your loss is due to Accident or Sickness. *As this evaluation normally takes place at the onset of a claim, I apologize that this issue was not resolved many years ago, and I thank you for bringing it to our attention.*

(Jones Decl. ¶ 36, Ex. II) (emphasis added).

A call log dated September 4, 2007 reflects the following:

> He mentioned that perhaps we should have contested his "accident" claim at the time of the claim, and I said that I agreed that the issue should have been decided many years ago and that I would take that into consideration.

(Jones Decl. ¶ 37, Ex. JJ.)

In a letter dated November 26, 2007 (the "November 2007 Determination Letter"),

Mr. Shea, on behalf of PL & A, stated as follows:

Benefits are payable to age 65 for loss due to Sickness. Your policy defines Injuries as: accidental bodily injuries occurring while this policy is in force. Sickness is defined as: sickness or disease which is first manifested while this policy is in force. *For the duration of our claim, benefits have been paid under the Sickness provision of your policy, although a formal evaluation of whether your loss is due to Injury or Sickness has never been conducted.* I apologize again that his issue was not addressed earlier; however, the delay in analyzing whether your loss is due to Injury or Sickness does not mean the company has waived its right to perform this evaluation.

\* \* \*

The company acknowledges the fact that you listed on your initial claim forms, dated January 27, 1997 that your loss was due to 'spinal injury resulting from fall while skiing in Lake Tahoe, Nevada in spring of 1995.'

(Jones Decl. ¶ 38, Ex. KK) (emphasis added).

## H. *Plaintiff's Appeal*

On March 17, 2008, Plaintiff appealed what was in effect Defendants' denial of his accidental disability benefits in the November 2007 Determination Letter. On May 19, 2008, Defendants affirmed their denial of Plaintiffs claim for accident benefits. (Pl.'s Facts ¶¶ 59, 611; Defs.' Issues ¶¶ 59, 61.) Since June 18, 2008, Defendants have paid no further disability benefits to Plaintiff under the Policy. (Pl.'s Facts ¶ 62; Defs.' Issues ¶ 62.)

## III.

### *LEGAL STANDARD*

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *accord Munoz v. Mabus,* 630 F.3d 856, 859–60 (9th Cir.2010). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c), (e) (1986)); *see also Norse v. City Of Santa Cruz,* 629 F.3d 966, 973 (9th Cir.2010) (*en banc* ) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "[T]he inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## IV.

### *DISCUSSION*

### A. *Plaintiff's Equitable Estoppel Claim*

■ Plaintiff contends that Defendants should be estopped from asserting that Plaintiff's claim is for disability based on "sickness" rather than "injury."

### 1. *Legal Standards for Equitable Estoppel*

██ The doctrine of equitable estoppel provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment. *People v. Castillo*, 49 Cal.4th 145, 156 n. 10, 109 Cal.Rptr.3d 346, 230 P.3d 1132 (2010). Accordingly, California courts have held that in order for equitable estoppel to apply, the following four elements must be met: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. *People v. Castillo*, 49 Cal.4th 145, 156 n. 10, 109 Cal.Rptr.3d 346, 230 P.3d 1132 (2010).

██ In *City of Hollister*, the court clarified that equitable estoppel is not limited to situations amounting to fraud. *City of Hollister v. Monterey Ins. Co.*, 165 Cal.App.4th 455, 488, 81 Cal.Rptr.3d 72 (2008). Indeed, "estoppel" refers to a conceptual pattern, which paradigmatically arises when a party's prior conduct is at odds with that party's litigation assertions. *Id.* at 486, 81 Cal.Rptr.3d 72. In the insurance context, for example, estoppel may arise where the insurer's conduct "threatens to unfairly impose a forfeiture of benefits upon the insured," even though the insurer has not engaged in affirmative conduct or acted with fraudulent intent. *Id.* at 488, 81 Cal.Rptr.3d 72. In such cases, the triggering conduct is itself blameworthy and "cast[s] a pall of unfairness over the position now asserted." *Id.* at 487, 81 Cal.Rptr.3d 72.

The *City of Hollister* court determined that "a more accurate description" of the elements of equitable estoppel is as follows:

> (1) The party to be estopped has engaged in blameworthy or inequitable conduct; (2) that conduct caused or induced the other party to suffer some disadvantage; and (3) equitable considerations warrant the conclusion that the first party should not be permitted to exploit the disadvantage he has thus inflicted upon the second party.

165 Cal.App.4th at 488, 81 Cal.Rptr.3d 72. When invoked, the Court "in effect closes its ears to a point—a fact, argument, claim, or defense—on the ground that to permit its assertion would be intolerably unfair." *Id.* at 486, 81 Cal.Rptr.3d 72.

██ Equitable estoppel may also arise from silence where there is a duty to speak and that duty need not arise from any particular agreement or a legal obligation in the ordinary sense. *Spray, Gould & Bowers v. Associated Int'l Ins. Co.*, 71 Cal.App.4th 1260, 1268–69, 84 Cal.Rptr.2d 552 (1999) ("Courts of equity apply in such cases the principles of natural justice, and whenever these require disclosure they raise the duty and bind the conscience and base upon the omission an equitable forfeiture to the extent necessary to the protection of the innocent party").

### 2. *Discussion*

### a. *Defendants Fail to Raise a Triable Issue As To Whether Defendants Engaged In Blameworthy Or Inequitable Conduct*

Plaintiff contends that Defendants' conduct is blameworthy or inequitable because they had a "duty to speak," *i.e.*, to inform Plaintiff that his claim was being treated as a "sickness" claim rather than an "accident" claim, and failed to do so for over ten years. Defendants, on the other hand, argue that: (1) Defendants were not required to make an accident/sickness de-

termination at the time of Plaintiff's claim and did not make the accident/sickness determination until 2007; and (2) Plaintiff fails to present evidence that Defendants knew that Plaintiff's disability was due to an accident in 1997. Defendants' arguments are unpersuasive.

According to Defendants, "[w]hile ideally it would have been preferable for Provident Life to have determined the accident versus sickness issue earlier than it did in this case, Provident Life did not have a legal duty to make that determination at the outset of August's claim." (Defs.' Opp'n at 14.) Defendants' argument is contrary to well-established law.

■ In California, Defendants bear a common law obligation to assist the insured to recover bargained-for policy benefits. *City of Hollister,* 165 Cal.App.4th at 490, 81 Cal.Rptr.3d 72. Extensive regulations also impose on insurers a broad "duty to speak" with regard to an insured's coverage. *See, e.g.,* Cal.Code. Regs. tit. 10, § 2695.4(a) (requiring every insurer to disclose to insureds "all benefits, coverage, time limits or other provisions of any insurance policy issued by that insurer that may apply to the claim presented by the claimant"); Cal.Code. Regs. tit. 10, § 2695.4(b) (prohibiting insurers from "misrepresent[ing] or conceal[ing] benefits, coverages, time limits or other provisions of the bond which may apply to the claim presented under a surety bond"); Cal. Ins. Code § 790.03(h)(13) (providing that unfair competition in the business of insurance includes failing to "provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement").

An insurer must deny or reject claims in writing and provide the insured with the basis for such denial, as follows:

Where an insurer denies or rejects a first party claim, in whole or in part, it shall do so in writing and shall provide to the claimant a statement listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge.

Cal.Code Regs. tit. 10 § 2695.7(b)(1). In fact, the insurer must accept or deny claims within 40 calendar days of receiving a proof of claim and the amounts accepted or denied must be clearly documented in the claim file unless the claim has been denied in its entirety. Cal.Code Regs. tit. 10 § 2695.7(b).

In this case, Defendants had a duty to disclose "all benefits, coverage, time limits or other provisions of any insurance policy issued by that insurer that may apply to the claim" pursuant to section 2695.4(a). Cal.Code. Regs. tit. 10, § 2695.4(a); *see also Superior Dispatch, Inc. v. Ins. Corp. of New York,* 181 Cal.App.4th 175, 190, 104 Cal.Rptr.3d 508 (2010) (section 2695.4(a) requires an insurer to disclose to its insured claimant *any* contractual limitations provision and other policy provisions that may apply to the claim). Plaintiff presents uncontroverted evidence that he submitted his disability claim as an accident claim and that his claim was accepted and paid by Defendants without any dispute as to the origin of the disability.

It also is undisputed that Defendants did not notify Plaintiff in writing of any denial or rejection of his claim until 2007. Instead, Defendants first informed Plaintiff in a letter dated October 13, 2006 that his benefits were scheduled to expire on his 65th birthday. In a letter dated August 23, 2007, Defendants acknowledged that they had not yet made the accident/sickness determination. Finally, in the November 2007 Determination Letter, Defen-

dants informed Plaintiff that his claim was being administered as a loss due to "sickness."

In fact, by emphasizing that no accident/sickness determination was made until 2007, Defendants effectively concede a violation of their duty to speak under section 2695.7(b) of the insurance regulations. As discussed *supra*, section 2695.7(b) requires that an insurer must accept or deny claims within 40 calendar days of receiving a proof of claim. Cal.Code Regs. tit. 10 § 2695.7(b). Here, Defendants admit that their November 2007 Determination Letter constituted a denial of Plaintiff's accident based claim. (Jones Decl. ¶ 9, Ex. H; Carlson Depo. at pp. 132–133.) Defendants also concede that PL & A did not promptly evaluate whether Plaintiff's loss was due to injury or sickness and offer no

explanation why Plaintiff's claim, although submitted as an accident claim, was initially coded as a sickness claim prior to any investigation of the claim. (Jones Decl. ¶ 15, Ex. N; Shea Depo. at pp. 111–117; Jones Decl. ¶ 9, Ex. H; Carlson Depo. at pp. 28–30.)

Defendants' argument that they had no "knowledge of the facts" because no accident/sickness determination was or needed to be made is also an unconvincing tautology. As discussed *supra*, Defendants concede that although no accident/sickness determination was made in 1997, Plaintiff submitted an accident-based claim. Defendants cannot bury their heads ostrich-like in the sand and pretend that they had no access to the facts at or around the time Plaintiff submitted his claim or that no duty to investigate was triggered.[2]

---

**2.** Defendants also appear to contend that because Plaintiff's claim was originally a "residual benefits" claim (i.e., a partial, rather than total, disability claim), Defendants were not required to make an accident/sickness determination upon Plaintiff's initial submission of his claim. In support of their argument, at the March 11, 2011 hearing, Defendants presented for the first time a copy of a July 1, 1997 letter to Plaintiff from PL & A, which indicated that PL & A obtained records from Paul Revere to make a preliminary determination regarding Plaintiff's "Residual benefits."

> The July 1, 1997 letter stated:
> > For the remainder of the period for which you are claiming Residual disability, the only other months in which a qualifying loss was noted were the months of October, 1996 and January, 1997. Two checks are enclosed for these months of Residual disability. The benefits were paid at half your monthly benefit amount as stipulated by the Residual provision of your policy.
>
> (Supp. Decl. Jenny H. Wang ("Wang Supp. Decl.") ¶ 2, Ex. A.) A May 3, 1997 letter to Plaintiff also indicated that PL & A issued payments to Plaintiff "on the assumption that [he would] qualify for Residual benefits." (Wang Supp. Decl. ¶ 2, Ex. A.)

On Plaintiff's Statement of Claim, Plaintiff indicated that the date of "total and complete inability to work" was June 14, 1996. (Jones Decl. ¶ 10, Ex. I.) Plaintiff also presents evidence that it was Paul Revere, and not PL & A, that challenged whether Plaintiff was totally disabled. (Jones Decl. ¶ 17, Ex. P; Jones Reply Decl. ¶ 6, Ex. 5.) Defendants' letters are inconsistent with Plaintiff's claims documentation and Defendants' own affirmative conduct in paying total disability benefits to Plaintiff until 2008.

While Defendants' letters may create a disputed issue of fact as to whether Defendants had *internally* decided to treat Plaintiff's claim as a partial disability claim or a sickness claim, that dispute is material to whether Defendants' conduct was *willful*—an issue not presented in the current motion and therefore not decided by this Court. What remains uncontroverted for purposes of this motion is that Defendants had actual notice of Plaintiff's *claim* of total and complete inability to work as of June 14, 1996, Defendants ultimately paid Plaintiff total disability benefits, and Defendants failed to either notify Plaintiff of or resolve the accident/sickness dichotomy until, at the earliest, its 2006 Letter.

Finally, Defendants' reliance on *Aetna Casualty & Surety Co. v. Richmond,* 76 Cal.App.3d 645, 652–53, 143 Cal.Rptr. 75 (1977) is misplaced. Defendants cite the *Aetna Casualty* for the proposition that the doctrine of estoppel is "not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom." *Id.* at 653, 143 Cal.Rptr. 75. In *Aetna,* the court considered whether the insurer was estopped from relying on exclusionary clauses where the insurer informed the insured that he was "fully covered." The court in *Aetna* concluded that there was no estoppel because the insured was charged with knowledge of the explicit exclusions whose applicability otherwise was not disputed. *Id.* at 652, 143 Cal.Rptr. 75. In the instant action, however, Plaintiff does not seek coverage excluded by the Policy. Rather, as discussed *supra,* the question is whether Defendants are estopped from terminating lifetime accidental disability benefits under its late-blooming sickness justification, the merits of which Plaintiff disputes.

As recounted above, the uncontroverted evidence indicates that: (1) Defendants were apprised of the fact that Plaintiff submitted a disability claim based on accident, (2) Defendants accepted and paid Plaintiff's accident claim as submitted, and (3) Defendants failed to promptly inform Plaintiff of a sickness determination until more than 10 years later. The Court finds that, under the circumstances of this case, there is no triable issue of fact as to whether Defendants' conduct in this case is inequitable.

### b. Defendants Also Fail to Raise a Triable Issue Whether Defendants' Inequitable Conduct Caused Plaintiff To Suffer A Disadvantage & Whether Equitable Considerations Warrant The Conclusion That Defendants Should Not be Permitted To Exploit The Disadvantage They Inflicted On Plaintiff

■ In order for equitable estoppel to apply, the Court also must determine that Defendants' prior conduct is at odds with its assertions in this litigation and that Defendants' conduct "somehow caused [Plaintiff] to suffer some harm or change of position without which the matter now asserted could or would have been deprived of its damaging potential." *City of Hollister,* 165 Cal.App.4th at 487, 81 Cal. Rptr.3d 72.

Plaintiff contends that Defendants' conduct induced him not to protect his rights in 1997 and that he is now disadvantaged. According to Plaintiff, because PL & A did not challenge, or inform Plaintiff of any challenge to, Plaintiff's accident claim, Plaintiff reasonably believed that PL & A accepted his claim for lifetime benefits due to accidental injury. Plaintiff therefore has been disadvantaged because he relied on the fact that he would have lifetime benefits when he terminated his medical practice and because evidence that may have been available or preserved in 1997 is no longer attainable now.

■ Defendants argue that Plaintiff did not "detrimentally rely" on the alleged blameworthy conduct.[3] All that Plaintiff needs to prove in order for equitable estoppel to apply, however, is that "the inequitable conduct invoked for the doctrine

---

**3.** At the March 11, 2011 hearing, Defendants urged the Court to find that Plaintiff has not been "prejudiced" by the more than ten-year delay. As discussed herein, however, the standard for determining whether equitable estoppel applies requires a finding that Plaintiff has been "disadvantaged." *City of Hollister,* 165 Cal.App.4th at 488, 81 Cal.Rptr.3d 72.

[was] a cause of harm to the party asserting it." *City of Hollister,* 165 Cal.App.4th at 513, 81 Cal.Rptr.3d 72. Where, as here, the inequitable conduct is one of omission, "the law will not invariably require reliance." *Id.* (while one cannot "rely on" another's "obstructionism or recalcitrance ... such conduct can nonetheless give rise to estoppel where it causes harm to another"). In the insurance context, where an insured's lack of knowledge may result in a loss of benefits or a forfeiture of rights, an insurer is required to bring the relevant information to the insured's attention so as to enable the insured to take action to secure his rights under the policy. *Id.* at 491, 81 Cal.Rptr.3d 72 (citing *Davis v. Blue Cross of No. Cal.,* 25 Cal.3d 418, 428, 158 Cal.Rptr. 828, 600 P.2d 1060 (1979)).

It is undisputed in this case that Defendants failed to promptly provide information to Plaintiff necessary for him to protect his right to bargained-for benefits under the Policy. To allow Defendants now to defend against Plaintiff's breach of contract claim on the basis of their 2007 sickness determination would be "intolerably unfair" in light of their more than ten-year silence. For ten years, Plaintiff reasonably believed that Defendants accepted his claim, which he submitted on the basis of an accident, and was not notified by Defendants of any reason to believe otherwise. Had Defendants denied Plaintiff's accident-based claim in 1997, and provided him a written explanation as required by the regulations at that time, Plaintiff would have been in a better position to protect his rights to benefits under the Policy than he is now, a decade later.

Defendants cannot escape the fact that Plaintiff has suffered evidentiary disadvantage as a result of Defendants' ten-year silence. It is undisputed that certain medical records from at least three doctors are no longer available (Jones Decl. ¶¶ 45–47, Exs. SS–UU), Ms. Varnell, the PL & A disability specialist who decided Plaintiff's claim in 1997, is unavailable as a witness (Decl. of H. Dee Taylor ¶¶ 2–3), and Plaintiff's memory of the relevant details has faded (Jones Decl. ¶ 4, Ex. C; August Depo. at pp. 14–15, 32, 44–46, 54–55, 83–84.) While Defendants contend that it is mere speculation to assume that Plaintiff would have been able to obtain favorable evidence in 1997 that is not now available, Plaintiff presents cogent reasons why the evidentiary gaps identified above disadvantage his case. Certainly, Ms. Varnell, the initial adjuster whose various notations and correspondence in the claims file are a subject of dispute, would have been a material witness. In addition, the missing medical records of physicians who examined and/or treated Plaintiff prior to his ski accident would be relevant to a determination of whether a pre-existing condition, rather than the accident, was the genesis of Plaintiff's total disability claim.

Furthermore, although Defendants emphasize that no accident/sickness determination was made until 2007 after Plaintiff's 65th birthday, Defendants are unable to explain the "32 TOTAL DISA SICKNESS" coding that appeared on the November 7, 1997 Initial Claim Data. (Jones Reply Decl. ¶ 3, Ex. 2; Carlson Depo. at pp. 24–25.) Defendants also were unable to locate documents setting reserve amounts for Plaintiff's claim for the years 1997 to 2000, which could have shed light on Defendants' claim determination at the time. In response to Plaintiff's request for "all documents that reflect any individual reserve or valuation on plaintiff's disability claim," Defendants stated:

> After reasonable search and diligent inquiry, Defendants have not located documents responsive to the Court's ruling on this request other than what was already produced to Plaintiff's counsel

before the Court issued its ruling on this request.

(Jones Reply Decl. ¶ 5, Ex. 4.)

Thus, even when viewing the evidence in the light most favorable to Defendants, the Court finds incontrovertible evidence that Defendants' dilatory conduct caused Plaintiff to suffer a disadvantage and that Defendants should not be permitted to exploit the disadvantage they inflicted on Plaintiff. The Court therefore grants Plaintiff's Motion with regard to the application of equitable estoppel.

**B.** *Plaintiffs Breach of Contract Claim*

 Plaintiff contends that in the event the Court finds that Defendants are estopped from raising their sickness defense, then the Court should also find that Defendants have breached the agreement to pay lifetime benefits under the Policy. Defendants do not argue to the contrary.

To recover on a cause of action for breach of contract, a plaintiff must establish: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damages to plaintiff. *Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes*, 191 Cal.App.4th 435, 120 Cal.Rptr.3d 797 (2010). It is undisputed in this case that the Policy was a contract, under which Plaintiff performed, and that under the accidental injury provisions of the Policy, Plaintiff was entitled to lifetime disability benefits. Due to the Court's ruling on the application of equitable estoppel, there is no triable issue of material fact as to whether Defendants, in fact, breached the Policy when they terminated Plaintiff's benefits and whether Plaintiff has been damaged as a result.

Accordingly, in light of the Court's finding that Defendants are equitably estopped from asserting a "sickness" defense, as discussed *supra*, the Court finds that Defendants also are in breach of con-

tract. The Court therefore grants Plaintiff's Motion as to his breach of contract claim.

V

### CONCLUSION

In light of the foregoing, Plaintiff's Motion is GRANTED as follows:

1. Defendants are equitably estopped from asserting a sickness defense; and

2. Defendants are liable for breach of contract.

IT IS SO ORDERED.